# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2011

No. 10-20609

Lyle W. Cayce
Clerk

In the Matter of: LAWRENCE DAVID VELAZQUEZ; TRACY LOUISE VELAZQUEZ,

Debtors

_____

LAWRENCE DAVID VELAZQUEZ; TRACY LOUISE VELAZQUEZ,

Appellees

v.

COUNTRYWIDE HOME LOANS SERVICING, L.P.,

Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before KING, DAVIS, and GARZA, Circuit Judges.

PER CURIAM:

In the Chapter 13 case of Appellees Lawrence David Velazquez and Tracy Louise Velazquez, Appellant Countrywide Home Loans Servicing, L.P. sought the recovery of attorney's fees incurred in connection with the bankruptcy as well as a determination that compliance with Federal Rule of Bankruptcy Procedure 2016 was not necessary for the recovery of such fees. The bankruptcy court held that Countrywide Home Loans Servicing, L.P. was not entitled to

No. 10-20609

recover its attorney's fees and determined that there was no justiciable issue to resolve regarding the applicability of Bankruptcy Rule 2016 because Countrywide had already complied with the rule. The district court affirmed. We hold that the bankruptcy and district courts misconstrued the provision of the contract governing the availability of attorney's fees and that Countrywide is entitled to recover the fees sought in its Fee Application. Like the bankruptcy and district courts, however, we decline to address whether Bankruptcy Rule 2016 applies. We reverse and remand for further proceedings.

## I. **Factual and Procedural Background**

On September 8, 2006, Lawrence David Velazquez and Tracy Louise Velazquez ("the Velazquezes") executed a note (the "Note") in the principal amount of $125,986 for the purchase of a home in Pasadena, Texas. The Note was secured by a deed of trust (the "Deed of Trust") on the property. Subsequently, the Velazquezes defaulted on their obligations under the Note and the Deed of Trust. On May 19, 2008, the Velazquezes filed a petition for relief under Chapter 13 of the Bankruptcy Code.

Countrywide Home Loans Servicing, L.P. ("Countrywide") timely filed a proof of claim (the "Proof of Claim") on August 4, 2008, in the Velazquez case for $141,733.93.[1] The claim consisted of a principal balance of $125,232.87 and $16,501.06 as the amount of arrearage to be cured by the plan. The Proof of Claim listed $200 in "Post-Petition Bnk. Atty. Fees" as part of the arrearage. On January 9, 2009, Countrywide filed a fee application (the "Fee Application") seeking approval of the $200 included in the Proof of Claim as well as recovery of an additional $150 in fees incurred for the preparation and prosecution of the Fee Application.

---

[1] An amended proof of claim was filed on February 27, 2009, but it does not affect the analysis.

No. 10-20609

On February 26, 2009, a hearing was held in the United States Bankruptcy Court for the Southern District of Texas regarding the Fee Application. At the hearing, Countrywide argued that compliance with Federal Rule of Bankruptcy Procedure 2016[2] was not required in this instance and that Countrywide should not be subjected to the "[Rule] 2016 process." According to Countrywide, because it filed the Proof of Claim and no party in interest objected, the claim for attorney's fees should be deemed allowed under 11 U.S.C. § 502(a).

Countrywide further argued that Sections 9 and 14 of the Deed of Trust entitle it to collect the attorney's fees sought. Section 9 of the Deed of Trust provides:

> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then *Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. *Lender's actions can include*, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) *paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument*, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes,

---

[2] Throughout this opinion, we will use "Bankruptcy Rule" or "Rule" to describe the Federal Rules of Bankruptcy Procedure. In addition, any references to the "Code" denote the United States Bankruptcy Code.

3

eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

. . . .

(emphasis added).

Section 14 of the Deed of Trust states:

14. **Loan Charges**. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

. . . .

The bankruptcy court held that the Deed of Trust did not entitle Countrywide to be reimbursed for the attorney's fees sought in the Fee Application. *In re Rangel*, 408 B.R. 650, 674 (Bankr. S.D. Tex. 2009). The court focused on the language in the Deed of Trust providing that the "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property *and* rights under this Security Instrument . . . ." *Id.* at 674 (emphasis added). The court interpreted the Deed of Trust as allowing recovery of fees only when they were incurred to protect *both* Countrywide's interest in the property *and* its rights under the Security Instrument. *Id.* at 675–76. The

No. 10-20609

bankruptcy court further found that "Countrywide's 'interest in the Property'—i.e. the Velazquezes' homestead—cannot be affected by the Velazquezes' Chapter 13 proceedings because . . . [11 U.S.C.] § 1322(b)(2) expressly provides that a Chapter 13 plan may not modify a home lender's contract rights." *Id.* at 674–75.

The bankruptcy court declined to reach the issue regarding the applicability of Rule 2016 to Countrywide, finding there was no controversy to resolve. *Id.* at 664. Under Rule 2016, "[a]n entity seeking interim or final compensation for services . . . from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The bankruptcy court reasoned that whether Countrywide was required to file a fee application under Rule 2016 was not a justiciable issue because Countrywide had already complied with the rule by filing the Fee Application.

Countrywide appealed the bankruptcy court's rulings regarding its entitlement to fees and the applicability of Rule 2016 to the United States District Court for the Southern District of Texas, which adopted the bankruptcy court's reasoning in full and affirmed. *Countrywide Home Loans Servicing, LP v. Velazquez*, No. 09-CV-02084, at 9 (S.D. Tex. Aug. 11, 2010). Countrywide now appeals to this court.

## II. **Discussion**

In appeals originating from a bankruptcy court's decision, we review findings of fact for clear error, and conclusions of law are reviewed de novo. *Plunk v. Yaquinto* (*In re Plunk*), 481 F.3d 302, 305 (5th Cir. 2007). Interpretation of the Deed of Trust presents a question of law that the court reviews de novo. *See Cleere Drilling Co. v. Dominion Exploration*, 351 F.3d 642, 645 (5th Cir. 2003).

A. *The Deed of Trust*

As the bankruptcy court noted, "[a] home lender's ability to collect fees and costs from a Chapter 13 debtor's bankruptcy estate is governed, in the first instance, by the language of its loan documents." *In re Rangel*, 408 B.R. at 655. Texas state law governs the interpretation of the Deed of Trust. "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). When interpreting a contract, a court "should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis omitted). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.*

Countrywide argues that the bankruptcy and district courts misconstrued the language in Sections 9 and 14 of the Deed of Trust. Section 9 of the Deed of Trust entitles Countrywide to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . ."[3] The district and bankruptcy courts interpreted this phrase as providing for the recovery of fees only for the limited set of activities that simultaneously protect both Countrywide's interest in the property and its rights under the Deed of Trust. *Countrywide*, No. 09-CV-02084, at 6; *In re Rangel*, 408 B.R. at 675–76. Countrywide, on the other hand, maintains that "and" should be interpreted as "either or both." In other words, Countrywide

---

[3] Section 14 of the Deed of Trust contains similar language regarding services performed "for the purpose of protecting Lender's interest in the Property and Rights under this Security Instrument . . . ." However, our ruling is based on our interpretation of Section 9.

interprets Section 9 as entitling it to do or pay for activities that protect its interest in the property, protect its rights under the Deed of Trust, or protect both its interest in the property and its rights under the Deed of Trust.

At the outset, we note that the word "and" is often construed as conjunctive and interpreted in a manner consistent with the rulings of the bankruptcy and district courts. *See Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 715–16 (5th Cir. 1988) (noting that "[t]he word 'and' is . . . to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where strict grammatical construction will frustrate clear legislative intent" but holding that "and" should be given a disjunctive rather than conjunctive meaning in the statute at issue); *Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944) (noting that "and" and "or" are typically not interchangeable). However, "and" can be interpreted as disjunctive when the context requires. *See Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 703–04 (Tex. App.—El Paso, 1993, no writ) (interpreting "and" in the context of a provision listing a partnership's purposes as permitting the partnership to engage in "any one or all of" the activities listed); *Aerospatiale Helicopter Corp. v. Universal Health Servs. Inc.*, 778 S.W.2d 492, 502 (Tex. App.—Dallas 1989) ("Although in common usage 'and' is conjunctive and 'or' is disjunctive, and, therefore, the two are not usually interchangeable, they are interpreted as synonymous when the context so requires in order to give effect to the manifest intent."); *see also Bd. of Ins. Comm'rs*, 180 S.W.2d at 908 (stating that "and" may be interpreted as "or" where necessary to "effectuate the manifest intention of the user") (internal quotation marks and citation omitted). "One of the recognized uses of 'and' is to refer to 'either or both' of two alternatives . . . ." *Aerospatiale Helicopter Corp.*, 778 S.W.2d at 502.

No. 10-20609

We note that a Texas appellate court interpreted very similar language to that found in Section 9 of the Deed of Trust in *Lanier v. Spring Cypress Investments* and found that "and" meant "either or both."  1995 WL 489427, at *2 (Tex. App.—Houston [1st Dist.], August 17, 1995, no writ) (not designated for publication).  In *Lanier*, a note provided that "Maker shall be fully liable to Payee or other holder of this note . . . for: (a) ad valorem and other taxes, assessments and impositions paid by Payee *to protect its interest and the lien of the Deed of Trust securing this note . . . ."  Id.* at *1 (emphasis added).  The related deed of trust contained a similar provision.  *Id.*  Appellees defaulted on their payment obligations, and the appellant foreclosed his lien on the property on March 6, 1990.  *Id.* at *2.  After the foreclosure, appellants paid $42,173.24 in past-due taxes for 1988 and 1989 and sought to recover this amount under the note and the deed of trust.  *Id.*  Appellees, however, argued that they were not liable for any taxes paid by the appellants *after* the foreclosure.  *Id.*  According to appellees, their liability only existed when the note holder paid taxes to protect its interest *and* the lien of the Deed of Trust.  *Id.*  Because the lien was extinguished following foreclosure, the appellees reasoned, the payment of taxes could not have protected the appellant's lien.  *Id.*  The court, however, rejected this argument and interpreted the language of the note as imposing liability "for any taxes paid by Lanier to protect *either or both* his interest and the lien."  *Id.* at *3 (emphasis added).[4]  Although *Lanier*, being unpublished, is not binding precedent, the similarity of the provision at issue in *Lanier* and Section 9 of the Deed of Trust, as well as the applicability of Texas law in both instances, militates in favor of interpreting "and" as "either or both" in Section 9.

---

[4] The *Lanier* court also noted that interpreting the language of the note in the manner suggested by the appellees would cause an absurd or commercially unreasonable result. *Lanier*, 1995 WL 489427, at *3. However, the court's interpretation of the language at issue does not appear to depend on this finding of absurdity.

No. 10-20609

Moreover, in the instant case, we find that consideration of Section 9 as a whole requires construing "and" to mean "either or both" to effectuate the clear intent of the parties.[5]  Section 9 specifically lists contemplated actions that can be undertaken by the lender.  It states that "Lender's actions can include, but are not limited to . . . paying reasonable attorneys' fees to protect its interest in the Property *and/or* rights under this Security Instrument, including its secured position in a bankruptcy proceeding." (emphasis added).  In light of this language, it is clear that the Deed of Trust contemplates entitlement to attorney's fees incurred to protect Countrywide's interest in the property or rights under the Deed of Trust.  Consequently, "and" does not strictly mean "both" in the phrase "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property *and* rights under this Security Instrument."  (emphasis added).  To interpret Section 9 otherwise would impermissibly render portions of the agreement meaningless and frustrate the intentions of the parties as made clear by Section 9 as a whole.  *See Phoenix Holdings, Ltd. v. Circle C Land Corp.*, 987 S.W.2d 933, 937 (Tex. App.—Austin 1999, pet. denied) (stating that courts are required "to interpret the contract in its entirety, to harmonize its various provisions, and to reject where possible an interpretation that would render any provision meaningless because it is presumed the parties intended each provision to have effect").

Further, we find that all the requirements for the recovery of attorney's fees set out by Section 9 have been satisfied.  It is not disputed that the Velazquezes were in default on their obligations under the Note and Deed of Trust.  Further, as the bankruptcy court noted, the Velazquezes' Chapter 13 case

---

[5] We are aware that a separate panel recently addressed the meaning of the language at issue here.  *See Wells Fargo Bank v. Collins* (*In re Collins*), No. 10-20658, 2011 WL 3568910 (5th Cir. Aug. 15, 2011) (per curiam).  In *Collins*, the court affirmed the denial of fees for want of reversible error.  We respectfully disagree regarding the meaning of the contract at issue.

No. 10-20609

was a proceeding that could significantly affect Countrywide's rights under the Deed of Trust, meaning that the triggering event under Section 9 had occurred. *In re Rangel*, 408 B.R. at 675. Countrywide incurred fees for acts that were reasonable or appropriate to preserve its rights under the Deed of Trust.[6] *See id.* at 667 (determining that the fees incurred were reasonable for the services rendered); *Countrywide*, No. 09-CV-02084, at 8 (stating that the bankruptcy court concluded that the Proof of Claim protected Countrywide's rights under the Deed of Trust). In addition, at least under the interpretation of Rule 2016 adopted by the bankruptcy judge, compliance with Rule 2016 was required by the bankruptcy court for Countrywide to recover its attorney's fees from the estate. As a consequence, the fees resulting from filing and prosecuting the Fee Application were reasonably and appropriately incurred to protect Countrywide's rights under the Deed of Trust. Thus, we hold that Countrywide was entitled to recover the attorney's fees sought in its Fee Application. Therefore, we reverse the judgment of the district court and remand for entry by the bankruptcy court of an order allowing such fees.

B. *The Applicability of Bankruptcy Rule 2016 to Countrywide*

Having concluded that Countrywide is entitled to the fees requested in its Fee Application, the issue of whether Countrywide was required to file a fee

---

[6] The bankruptcy court noted that there is a split of authority regarding whether "the filing of a proof of claim is a ministerial act for which attorney services are not necessary." *In re Rangel*, 408 B.R. at 666. The court then concluded that "the filing of a proof of claim is not a mere ministerial act. . . . Given the breadth of case law and far-reaching legal implications inherent in the filing of proofs of claim, this Court agrees . . . that paying an attorney for preparation of the proof of claim and the additional services rendered is reasonable." *Id.* (internal quotation marks and citation omitted). At several points in their briefing, the Velazquezes refer to the filing of a proof of claim as a "ministerial act." However, they fail to present any argument challenging the ruling that Countrywide's use of an attorney—as opposed to a non-attorney—to prepare and file the Proof of Claim was reasonable, and thus we do not address this issue. Consequently, we do not foreclose the ability of a bankruptcy court to assess the legitimacy of expenses on this ground.

No. 10-20609

application under Bankruptcy Rule 2016 is moot, regardless of whether it was moot in the bankruptcy and district courts (an issue we need not decide).

### III. **Conclusion**

For the reasons stated above, we REVERSE the judgment of the district court and REMAND for entry by the bankruptcy court of an order allowing the fees covered by the Fee Application.  Costs shall be borne by the Appellees.