## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50294
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel, GEORGE GAGE,

    Plaintiff - Appellant

v.

ROLLS-ROYCE NORTH AMERICA, INCORPORATED; ROLLS-ROYCE
DEUTSCHLAND LTD. & COMPANY KG,

    Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-803

Before STEWART, Chief Judge, and OWEN and OLDHAM, Circuit Judges.

PER CURIAM:*

George Gage brings this qui tam action as relator on behalf of the United States. He alleges that Rolls-Royce North America, Inc. and Rolls-Royce Deutschland LTD & Co. KG (collectively "Rolls-Royce") violated the False Claims Act ("FCA") by submitting false claims relating to sales of aviation equipment. But this case is not Gage's first bite at the apple. In a previous

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50294

suit, he brought identical claims against other defendants. Those claims were dismissed with prejudice. Noting that prior decision, the district court here held that issue preclusion barred Gage's claims. He appeals. We affirm.

I.

Gage brings this FCA case against Rolls-Royce as a relator on behalf of the United States. Gage alleges that Rolls-Royce submitted false claims for payment relating to aviation equipment supplied to the U.S. Air Force. According to Gage, Rolls-Royce supplied "non-conforming and non-airworthy" aircraft parts pulled from a crashed civilian aircraft. In connection with supplying these parts, Gage alleges that Rolls-Royce submitted false documents and invoices and, therefore, violated the False Claims Act. But this case is not Gage's first. In fact, this case is the third one in which Gage has participated.

Gage initially participated in litigation related to the same subject matter in 2010, when Davis S.R. Aviation, LLC sued Rolls-Royce over statements about allegedly defective aviation parts Davis Aviation was selling.[1] *See Davis SR Aviation, LLC v. Rolls-Royce N. Am., Inc.*, A-10-CV-367-LY (W.D. Tex. 2010) ("*Davis I*"). Gage served as an expert witness for Rolls-Royce in *Davis I*.

A few months after the parties in *Davis I* settled, Gage filed a FCA claim against numerous aviation companies, including Davis Aviation, alleging that they submitted false claims for payment.[2] *See United States ex rel. Gage v. Davis SR Aviation, et al.*, A-12-CV-904-SS, 2014 WL 3007201 (W.D. Tex. July 2, 2014) ("*Davis II*"). The claims were false, according to Gage, because the

---

[1] As discussed below, these parts were pulled from an aircraft that crashed in Canada. These parts form the basis of the second case and the case here.

[2] Gage amended his complaint twice in *Davis II*. The operative complaint was his third amended complaint.

2

companies supplied and installed defective replacement aircraft parts, which did not comply with various regulatory and contractual requirements. *Davis II* Compl. at 18. More specifically, Gage alleged that the prior defendants contracted with the U.S. Air Force to support aircraft used in Afghanistan. *Id.* at 7, 14, 18. The defendants, however, ran into a problem. The Air Force aircraft needed a steady stream of replacement parts, but the manufacturer could not assemble parts quickly enough. *Id.* at 2, 15. Around the same time, a civilian aircraft crashed in Nova Scotia. *Id.* at 13, 17. Ironically, the crashed aircraft had many of the parts that the defendants were required to supply under their contracts. *Id.* at 17. So, the defendants conspired to take the parts, and then supply and install them without properly inspecting them or disclosing that they were taken from the crashed aircraft. *Id.* Gage further alleged that the parts did not meet Federal Aviation Administration and Federal Acquisition Regulations. *Id.* They also did not meet various contract terms. *Id.* at 18, 22. Based on these facts, Gage alleged that the defendants knowingly or recklessly violated federal regulations and contract provisions by supplying unapproved, non-conforming, and non-airworthy parts. *Id.* at 2-3. As a result, the defendants submitted false claims to the U.S. Air Force. *Id.* at 43.

The district court dismissed Gage's claims for, among other things, failing to allege the fraudulent scheme with particularity. *Davis II*, 2014 WL 3007201, at *8. Gage failed to allege any specific information about who purchased, repaired, sold, and installed the defective parts. *Id.* at *6. He also failed to allege what federal regulations and contractual provisions the defendants violated. *Id.* at *6-7. Nor did he allege how the parts failed to comply with those regulations and provisions. *Id.* The Fifth Circuit affirmed. *See Davis II*, 2014 WL 3007201, *aff'd sub nom. United States ex rel. Gage v. Davis S.R. Aviation, LLC*, 623 F. App'x 622 (5th Cir. 2015) (unpublished).

No. 18-50294

Gage then filed this case. The complaint here, which Gage amended once, is based on nearly identical factual allegations as *Davis II*. The only meaningful difference is that Gage substitutes Rolls-Royce as the defendant. The complaint alleges that Rolls-Royce conspired with other parties to submit false claims based on the same government contract as *Davis II*. It also alleges that Rolls-Royce played a role in supplying defective parts to the Air Force from the same crashed plane as *Davis II*.

The district court dismissed the complaint, holding that issue preclusion barred Gage from relitigating the same issues as in *Davis II*. The district court also denied Gage's request to amend his complaint a second time. Gage now appeals.

II.

The issue of whether to apply defensive issue preclusion—formerly called collateral estoppel—is a question of law, making our review de novo. *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013) (citing *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997)).

Filing the same suit against different defendants in a piecemeal fashion is inefficient. It "wastes litigants' resources and adjudicators' time," *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1298 (2015); it "encourages parties who lose before one tribunal to shop around for another," *id.* at 1299; and it increases the chances for conflicting judgments, *see Montana v. United States*, 440 U.S. 147, 154 (1979). To prevent these inefficiencies, courts apply the doctrine of issue preclusion. Issue preclusion prevents a plaintiff from relitigating identical issues by "merely switching adversaries," thereby encouraging the plaintiff to "join all potential defendants in the first action if possible." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979).

Issue preclusion applies when three elements are met:

4

No. 18-50294

(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action.

*In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).  Issue preclusion, however, does not prevent parties from relitigating an issue unless the facts and the legal standard used to assess them are the same in both proceedings.[3] *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir. 1995).

This case is the perfect candidate for issue preclusion.  First, the facts are identical.  *Davis II* involved a FCA claim based on the same parts, same aircraft, and same alleged scheme as here.  *See Davis II* Compl. at 8-10. Nearly every single paragraph in the complaint was copied and pasted from the *Davis II* complaint.  The only substantive change Gage made was to substitute Rolls-Royce as the defendant.[4]  But Gage cannot avoid issue preclusion by simply changing parties.  Indeed, issue preclusion is designed to prevent plaintiffs from asserting the same factual allegations against different defendants in successive actions.[5]  *Parklane Hosiery*, 439 U.S. at 329 (noting that issue preclusion is designed to prevent a plaintiff from relitigating identical issues by "merely switching adversaries").

---

[3] Where, as here, a federal court "is considering the collateral estoppel effect of a prior federal judgment, this Circuit applies federal common law." *Reimer v. Smith*, 663 F.2d 1316, 1325 n.9 (5th Cir. 1981).

[4] Gage mentioned Rolls-Royce several times in his *Davis II* complaint, erasing any doubt about his ability to join Rolls-Royce as a defendant in that action. *See, e.g.*, *Davis II* Compl. at 11, 20, 43.

[5] For issue preclusion purposes, the parties need not be completely identical, "so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (internal citation omitted).  Gage does not argue—nor do any facts suggest— that he did not receive a full and fair opportunity to litigate this issue.

No. 18-50294

Second, the issue—whether Gage's allegations met the requirements of Rule 9(b)—was actually litigated in *Davis II*. A court's decision to grant a motion to dismiss qualifies as actual litigation because dismissal with prejudice is "a final judgment on the merits." *Brooks v. Raymond Dugat Co. LC*, 336 F.3d 360, 362 (5th Cir. 2003) (citation omitted); *see also* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4419 (3d ed. 2018) ("Nor can preclusion be defeated . . . by arguing that the first court should not have decided the issue on motion to dismiss."). The district court in *Davis II* concluded that Gage's complaint did not satisfy Federal Rule of Civil Procedure 9(b). *Davis II*, 2014 WL 3007201, at *8. In reaching its decision, the district court gave Gage every opportunity to show why his complaint met the requirements of Rule 9(b). This court did the same on appeal. The issue was fully briefed in the district court; the district court issued a lengthy opinion, dismissing Gage's complaint with prejudice; the Fifth Circuit affirmed; and after the appeal, the district court issued another opinion on the same subject matter denying Gage's motion to vacate.

Third, the district court's determination of the issue was necessary to the judgment and actually decided. The district court determined that Gage's complaint did not satisfy Rule 9(b), and then dismissed the complaint on those grounds. *Davis II*, 2014 WL 3007201, at *8.

Gage tries to distinguish the two cases by arguing that *Davis II* dealt with the sale of the banned parts, while this case deals with their installation and billing. This argument is factually incorrect. The *Davis II* complaint dealt with more than part sales. But even if the argument was factually correct, Gage gives no reason why the distinction between selling and supplying parts matters.

6

No. 18-50294

Accordingly, we affirm the district court's decision to grant Rolls-Royce's motion to dismiss.[6]

## III.

Rule 15(a) allows a plaintiff to amend his pleadings once as a matter of right. Fed. R. Civ. P. 15(a). If the plaintiff wants to amend his complaint a second time, he must get consent from the other party or ask the court for leave to amend. *Id.* While Rule 15(a) requires a district court to grant leave to amend "freely," *id.*, we recognize that decisions concerning motions to amend are "entrusted to the sound discretion of the district court." *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). Our review of this decision is limited to determining whether the trial court abused its discretion. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 576 n.8 (5th Cir. 2005) (internal citation omitted).

The trial court did not abuse its discretion here. A district court may deny a motion for leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, undue prejudice, or futility of the amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). While the court here did not label its reason for denying Gage's motion, it provided more than enough factual information to support its decision.

As the district court noted, Gage did not request leave to amend his complaint a second time until after Rolls-Royce filed its motion to dismiss, giving him over twenty months to address any shortcomings in his complaint. And the specific shortcomings here were the same shortcomings as in *Davis II*. Gage also fails to point out how he would amend his complaint. Nor does he identify any newly discovered information.

---

[6] Because we affirm the district court's ruling on issue preclusion grounds, we do not address Gage's argument that he met Rule 9(b)'s requirements in this case.

No. 18-50294

Accordingly, we affirm the district court's decision to deny Gage's motion for leave to amend his complaint a second time.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.